WILLARD F. MEYERS MACHINE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35796.   Promulgated February 10, 1930.

*A. E. James, Esq.*, for the petitioner.
*R. S. Scott, Esq.*, and *Edwin M. Niese, Esq.*, for the respondent

1072

## OPINION.

TRUSSELL: This appeal presents but one question, whether the amount paid in the fiscal year 1925 under a judgment rendered against petitioner in that year, together with amounts representing legal expenses incident thereto, and incurred in that year, constitute proper deductions from income as losses incurred in the regular operation of a trade or business and subject to be carried forward under section 206 of the Revenue Act of 1924 as net loss deductions from income of the two succeeding fiscal years, or, in fact, are amounts paid as incidents of a capital transaction representing dealings by petitioner in respect to its own stock and consequently not giving rise to taxable gain or deductible loss.

Petitioner treated the total of these sums as a net loss and deducted it over the fiscal years 1925 to 1927, inclusive, and the correctness of respondent's action in ·disallowing the credit taken for 1926 and 1927 is here in issue.

The record shows that this petitioner, by contract of April 30, 1915, employed one Simons as its general manager for a period of three years, this period being extended by a later contract for an additional three years. On the same date petitioner, by contract with Simons, which witnessed the fact that the latter had purchased and then owned $6,000 par value stock of petitioner, bound itself, in the event that Simons left its employ, to buy at par its stock then owned or which might later be acquired by the latter, or in the event that it did not care to acquire his stock, that same should be sold at auction, in which event it would be obligated to pay a sum equal to its par value less the amount realized on the auction sale if sold at less than par.

Within the succeeding six years Simons acquired additional stock of petitioner and at the end of that period he left petitioner's employ and called upon the latter under its contract to take all of such stock, 201 shares, at its par value of $20,100 and, upon its refusal to do so, brought suit upon the contract, sold the stock at auction, and was given judgment in the suit for $21,370.09, the sum due as liquidated by the contract provisions and the sale made, together with court costs of $135.40.

Respondent argues that had petitioner elected to take the stock under the contract the transaction would not have given rise to loss

or gain subject to reflection in income. He contends that the sums eventually paid were for breach of a contract to carry out such capital transaction and consequently the same rule must be applied to the amounts expended.

We can not agree with this theory. Petitioner's tax liability must be determined upon the basis of what was done and not on the basis of something which it must be admitted petitioner did not do. It is not indicated that the contract of April 30, 1915, in respect to Simons' stockholdings was executed to secure a purchaser for petitioner's stock. The language of that contract and the circumstances of its execution indicate that its purpose was to secure the services of this individual with an interest in the business which would be reflected in the character of service rendered, and the positive testimony of petitioner's president is to this effect. In other words, the liability assumed by the petitioner to buy its stock at par and the alternative liability assumed to reimburse Simons for any amount by which an auction sale of the stock might fail to realize its par value, were liabilities assumed in securing the services of this individual and to stimulate and increase his effectiveness in the rendering of that service, which would be reflected by an increased prosperity in the business. By the contract petitioner was given an option to do either of two things—purchase the stock at par, or pay an amount measured by the par value of the stock and its sale price at auction. Had petitioner elected to purchase the stock it is quite evident that the transaction would not have given rise to loss or gain. It would in that event have merely retired at par 201 shares of its stock. But we are not concerned with the question of the result of something which was not done. The fact that such transaction would have been a capital one can not fix as the same in character the transaction which petitioner actually carried out in electing to assume the alternative liability, especially when an analysis of this transaction shows that as a result of the payment in question petitioner neither secured an addition to his asset account nor reduced the amount of its liabilities represented by outstanding stock.

As we see it, petitioner was given the option under the contract to either make a capital transaction by acquiring its stock or to realize a loss in the payment of an amount which the terms of the contract provided a method for liquidating. Petitioner elected not to acquire this stock, but to assume the loss, and its liability to make this payment being one incurred in securing the services of a general manager for the business, we must hold that it is a loss incurred in the " operation of a trade or business regularly carried on " and consequently a net loss to be carried forward and deducted over the

two succeeding fiscal years under section 206 of the Revenue Act of 1924. Respondent was in error in disallowing the credits taken by petitioner on account of this loss in the fiscal years 1926 and 1927.

*Judgment will be entered pursuant to Rule 50.*